UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-CIV-24144-CMA

LIVE NATION WORLDWIDE, INC.,

 Plaintiff,

v.

MICHAEL COHL and S2BN
ENTERTAINMENT CORPORATION
(f/n/a EVENTS ACQUISITION CORP.),

 Defendants.
_____/

MICHAEL COHL and S2BN
ENTERTAINMENT CORPORATION
(f/n/a EVENTS ACQUISITION CORP.),

 Counterclaimants,

v.

LIVE NATION WORLDWIDE, INC.,

 Counterdefendant.
_____/

## AMENDED COUNTERCLAIM

 Defendants/Counterclaimants MICHAEL COHL ("Cohl") and S2BN ENTERTAINMENT CORPORATION (f/n/a Events Acquisition Corp.) ("S2BN") (collectively, "Cohl Parties"), by through their undersigned counsel, sue Plaintiff/Counterdefendant LIVE NATION WORLDWIDE, INC. ("Live Nation"), and allege as follows:

## JURISDICTION AND VENUE

1. Cohl is an individual who is a citizen of Canada, and resides in the country of Barbados. Cohl is *sui juris*.

2. S2BN is a Delaware corporation with its principal place of business in Miami Beach, Florida.

3. Live Nation is a Delaware corporation with its principal place of business in Beverly Hills, California.

4. This is an action for damages in excess of $75,000.00, exclusive of interest and costs.

5. The Letter Agreement under which this action is brought provides, among other things, that "Each party to this letter (A) hereby submits to the exclusive jurisdiction of the state courts located in Miami, Florida ... with respect to all actions brought under this [Letter Agreement]." *See* Exhibit 1 hereto, Section 2.4.

6. Venue is proper in Miami-Dade County in that at least one of the parties resides here and, additionally, the parties have agreed in Section 2.4 of the Letter Agreement to this venue.

## GENERAL ALLEGATIONS

7. Cohl is a well established live music concert promoter. He has worked in the concert promotion industry for over 40 years. His clients have included the Rolling Stones, U2, Pink Floyd, Frank Sinatra, Barbra Streisand, Stevie Wonder, Prince, The Who, Phil Collins/Genesis, and Crosby, Stills, Nash & Young.

8. Cohl is responsible for promoting four of the top-grossing concert tours of all time.

2

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

9. In 1989, Cohl promoted the Rolling Stones' Steel Wheels/Urban Jungle Tour, which encompassed North America, Japan and Europe and became the most financially successful rock concert tour in history.

10. From 1994 through 1995, Cohl promoted the Rolling Stones' Voodoo Lounge Tour. Cohl subsequently promoted the Rolling Stones' No Security Tour in the United States and its Bridges to Babylon Tour in Europe.

11. Cohl also promoted the Rolling Stones' 2002-2003 Tour.

12. In 2003, Cohl was instrumental in staging the Molson Canadian Rocks for Toronto SARS Benefit Concert, which was headlined by the Rolling Stones, and which was attended by an estimated 490,000 people.

13. Cohl also promoted the Rolling Stones' A Bigger Bang Tour from 2005 through 2006, which by November 2006 had been declared the highest grossing tour of all time.

14. Pursuant to a Stock Purchase Agreement dated September 12, 2007 ("SPA"), Cohl sold his various concert promotion entities ("CPI Entities") to Live Nation.

15. In connection with the sale of the CPI Entities, Cohl agreed to be bound by certain restrictive covenants that prohibited him, on a worldwide basis, for a period of nine years (commencing from the September 12, 2007 SPA closing date), from engaging in certain activities.

16. Also in connection with the sale of the CPI Entities to Live Nation, by separate agreement of the same date, Cohl agreed to serve as the most senior executive of the "Artist Nation Division" of Live Nation. Cohl subsequently became Chairman of the Board of Directors for Live Nation.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

17. Cohl resigned his position as the most senior executive of the "Artist Nation Division" of Live Nation, effective June 20, 2008. Cohl also resigned as Chairman of the Board of Directors of Live Nation.

18. Pursuant to a Letter Agreement dated September 22, 2008 (attached as Exhibit 1 hereto), Cohl bought various assets and rights from Live Nation. Cohl also paid separate and additional consideration in return for partial relief from the restrictive covenants set forth in the SPA. The relief from restrictive covenants was categorized into five "buckets". The instant Counterclaim relates to the "Second Bucket," which is by far the most valuable bucket of rights whereby Cohl could co-promote with Live Nation concert tours of four music performers with whom Cohl has had long-standing and highly successful professional relationships. These are referred to as "the Cohl Relationship Artists" ("CRAs").

19. In pertinent part, the Letter Agreement provided:

> Section 1.3   Partial Relief from Non-Compete Covenants.
>
> (a)   Existing Non-Compete Covenants and Non-Compete Relief Fee.
>
> . . . .
>
> (ii)   Non-Compete Relief Fee. The Buyer [Plaintiffs] will pay $5,500,000 (the "Non-Compete Relief Fee") to the Company [Live Nation] as a fee for the agreement of the Company to grant the partial relief from the Non-Compete Covenants as more fully set forth herein. The Non-Compete Relief Fee shall be payable in the following installments:
>
> (A)   $2,750,000 shall be payable on, or, at the Buyer's option, any time before the first anniversary of the Closing Date; and
>
> (B)   $2,750,000 shall be payable on, or, at the Buyer's option, any time before the second anniversary of the Closing Date.
>
> (b)   Partial Relief from Existing Non-Compete Covenants. On and subject to the terms hereof, in consideration for the Non-Compete Relief

4

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

> Fee, the Company hereby partially releases Cohl from the Non-Compete Covenants in such a manner that Cohl may thereafter engage in and pursue the following specifically identified activities, to the extent that he requires such release to engage in such activities without being in violation of the Non-Compete Covenants, it being understood that anything contained herein that provides relief from the Non-Compete Covenants shall be given effect, but nothing herein shall be deemed to extend or expand such Non-Compete Covenants:
>
> . . . .
>
> (ii) <u>Second Bucket – Touring Activities for Cohl Relationship Artists</u>. Subject to compliance with Section 1.4 hereof, the promotion of live concert tours ("<u>Tour Promotion Activities</u>") featuring the performance of any of the following artists (the "<u>Cohl Relationship Artists</u>") as the headline act: (i) Rolling Stones (with Mick Jagger) or Mick Jagger performing outside of the Rolling Stones, (ii) Pink Floyd (with David Gilmour) or David Gilmour performing outside of Pink Floyd, (iii) Barbra Streisand and (iv) Genesis (with Phil Collins). Without limiting or expanding the scope, extent or terms of the Non-Compete Covenants, under no circumstances will the Buyer, Cohl or any of their affiliates be permitted during the remaining term of the Non-Compete Covenants, without the prior written consent of the Company (which consent may be withheld in the Company's sole and absolute discretion), (A) engage in, or solicit any other live concert promotional opportunities other than the foregoing opportunities with the Cohl Relationship Artists, (B) solicit or enter into any artists rights deals, including so-called "<u>360 deals</u>", with any Concert Artists (defined below) or (C) become interested or involved, in any capacity, in the music recording business other than as expressly permitted hereby with respect to the Purchased Assets or to the extent not otherwise prohibited by the Non-Compete Covenants.

See Exhibit 1, Page 6, Section 1.3(a) and (b).

20.   With respect to the concert tours of the Rolling Stones, the Letter Agreement provides the following:

> Section 1.4   <u>Co-Promotion of Cohl Relationship Artists with the Company</u>.
>
> (a)   <u>The Company's Approval Rights and Terms of Co-Promotion Arrangements.</u> Notwithstanding the provisions of Section 1.3(b)(ii) hereof, Cohl may not engage in the activity of promoting any live concerts featuring the performances of any of the Cohl Relationship Artists at any time during the remainder of the term of the Non-Compete Covenants unless (A) the financial terms and other material agreements

5

COFFEY BURLINGTON

Office In The Grove, Penthouse   2699 South Bayshore Drive   Miami, Florida 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

related to the promotion of any such live concerts have been approved by the Company in its sole and absolute discretion (with respect to Rolling Stones and/or Mick Jagger, its approval not to be unreasonably withheld), and (B) arrangements with the Company have first been entered into acceptable to the Company in its sole and absolute discretion (with respect to Rolling Stones and/or Mick Jagger, its approval not to be unreasonably withheld), whereby the Company will participate with Cohl on the following basis:

   (i) <u>Rolling Stones/Mick Jagger</u>.  For any live concert tour involving the performance of Rolling Stones (with Mick Jagger) or Mick Jagger performing outside of rolling Stones as the featured headline act, (i) the Company is retained as the Exclusive Global Promoter, as hereinafter defined, (ii) the Company and Cohl share the profits and losses 33-1/3% to the Company and 66-2/3% to Cohl and (iii) the Company is granted any ancillary concert rights (such as tickets, merchandise, fan club, etc.) that are controlled by Cohl at market rates and on customary terms;

. . . .

As used herein, the term "<u>Exclusive Global Promoter</u>" means the provider of a full range of traditional tour support and management services in a manner consistent with the services provided by Live Nation pursuant to the Tour Financing and Services Agreement dated March 23, 2005 related to the 2005-2006 Rolling Stones Tour.

21. The Letter Agreement expressly provided that Cohl will take the lead in negotiating with the Rolling Stones (and all CRAs), that the intention of the parties is to co-promote the concert tours, and that any communications from Live Nation are to be "helpful to Cohl's efforts in obtaining the rights to promote the concert tour...."

 Section 1.9 <u>Coordination of Efforts with Regard to Cohl Relationship Artists; The Company's Freedom of Activity</u>.

  (a) <u>Generally</u>.  Cohl represents to the Company, and the Company acknowledges, the Cohl currently has a close business and working relationship with each of the Cohl Relationship Artists that should enable Cohl to successfully negotiate the acquisition of the rights to promote the concert tours of each Cohl Relationship Artist.  As provided in Section 1.4(a) hereof, it is the intent of the parties that Company and Cohl will co-promote the concert tours of each Cohl Relationship Artist if Cohl is successful in obtaining the rights to promote such concert tours.  Therefore, it is the parties' intent that Cohl will, as

6

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
Email: info@coffeyburlington.com www.coffeyburlington.com

> long as he is alive and able to do so, generally take the lead in conducting negotiations with each of the Cohl Relationship Artists in an effort to procure the rights to promote each concert tour of the Cohl Relationship Artists during the remaining term of the Non-Compete Covenants. As Cohl negotiates the acquisition of the rights to promote the concert tour of any Cohl Relationship Artist, Cohl will be required to remain in constant communication with the Company and its touring division head to advise of the terms under negotiation and to allow the Company to provide its input and advice concerning the financial terms under negotiation in an effort to facilitate and simplify the approval process described in Section 1.4(a)(A) of this letter. The foregoing provisions will not preclude the Company from engaging in discussions with any Cohl Relationship Artist (or the management of any Cohl Relationship Artist) in regard to the promotion rights for any proposed concert tour as the Company may believe, in good faith, will be helpful to Cohl's efforts in obtaining the rights to promote the concert tour of such Cohl Relationship Artist.

See Exhibit 1, page 16, Section 1.9(a).

22. In a letter dated February 8, 2010, Live Nation notified Cohl that it was going to bid against Cohl for the Rolling Stones' next concert tour (which had not even been presented for bid at that time), stating as follows:

> This letter is formal notice, pursuant to Section 1.9(b) of the Purchase Agreement, that Live Nation has determined, in its reasonable judgment, that you will be unable to successfully negotiate the acquisition of the rights to promote the next Rolling Stones' tour.
>
> Therefore, as provided in Section 1.9(b) of the Purchase Agreement, Live Nation now has the free and unfettered right to hereafter bid or seek to obtain directly the right to promote the next concert tour of The Rolling Stones, whenever that may occur, for its own account without any duty to share, co-promote or jointly pursue with Cohl any such rights that Live Nation may acquire.

A copy of Live Nation's February 8, 2010 correspondence is attached hereto as Exhibit 2.

23. Live Nation's February 8, 2010 letter was its first and only communication to Cohl asserting that Cohl will be unable to successfully negotiate the rights to promote the concert tour of any Cohl Relationship Artist. Live Nation made no effort whatsoever to discuss any concerns that it purportedly had regarding Cohl's ability to acquire the rights to the Rolling

7

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com        www.coffeyburlington.com

Stones' next tour. Nor did Live Nation's February correspondence contain any facts or other support for its conclusion. In truth and in fact, Live Nation's February 8, 2010 assertion is a complete fabrication and baseless.

24. Two days later, on February 10, 2010, Live Nation sent an email communication stating that Cohl could still pursue promotional rights for the Rolling Stones' next tour, but only through a joint venture with Live Nation as contemplated by the Letter Agreement. To that end, Cohl would be required to advise Live Nation of the details of any negotiations with the Rolling Stones, obtain Live Nation's approval of the terms of any promotional agreement, and then share the profits with Live Nation. A copy of Live Nation's February 10, 2010 email correspondence is attached hereto as Exhibit 3.

25. Plainly, if Cohl had to advise Live Nation of the details of his negotiations with the Rolling Stones, Live Nation could easily utilize this information to ensure that it undercuts Cohl's bid and other terms.

26. By correspondence from counsel for Cohl Parties dated February 12, 2010, Cohl Parties responded to Live Nation's correspondence. A copy of the February 12, 2010 correspondence is attached hereto as Exhibit 4.

27. Live Nation thereafter proposed on February 23, 2010 that Cohl and Live Nation simply compete for the Rolling Stones' next tour without any restrictions and without any obligation to co-promote or communicate with each other or share profits and losses. This proposal ignored the fact that Cohl had paid Live Nation millions of dollars for co-promotion rights and the lead role in negotiating with the Rolling Stones. A copy of the February 23, 2010 correspondence is attached hereto as Exhibit 5.

8

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com        www.coffeyburlington.com

28.     However, Live Nation's February 23 proposal attempted to deprive Cohl of the benefit of his bargain. Cohl agreed to pay Live Nation $15,350,000 in return for the right to: (a) not have to bid against Live Nation for the Rolling Stones' tour, (b) have Live Nation finance the tour, (c) have Live Nation perform the services of the "Exclusive Global Promoter" of the tour, and (d) receive two-thirds of the promoter's profits from the tour.

29.     The promoter's portion of the profits from the Rolling Stones' previous tour was substantial. Two-thirds of that substantial profit corresponds to the amount that Cohl has paid to Live Nation to date. While Cohl did purchase other assets, plainly the crown jewel of the Purchase Agreement is rights related to the Rolling Stones tour. Moreover, the value of these other assets is more than accounted for by the additional $5,000,000 that Cohl would have been obligated to pay under terms of the Letter Agreement had not Live Nation previously breached it.

30.     Live Nation has no reasonable basis to justify its assertion that Cohl will be not able to negotiate successfully with the Rolling Stones to acquire rights to promote their next tour.

31.     While there was no tour available for bid in February 2010 when Live Nation announced its unwarranted conclusion that Cohl could not successfully acquire promotional rights, the Rolling Stones thereafter began entertaining bids for a potential tour in 2011. In fact, in the second half of 2010, Cohl met with various representatives of the Rolling Stones, including Mick Jagger and Keith Richards, and was expressly invited to bid for tour promotional rights. In subsequent, more recent communications with Live Nation, it reiterated its position that it had the right to compete with Cohl for the Rolling Stones' tour promotional rights.

32.     Live Nation has attempted to interfere with and destroy Cohl's potential to procure the promotion rights to the Rolling Stones' future tours. Upon information and belief, Live Nation communicated to representatives of the Rolling Stones that Cohl and Live Nation

9

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

were in a dispute. Following Live Nation's bad faith February 8, 2010 letter, the Rolling Stones communicated to Cohl and his counsel that they perceived a "spat" developing between Cohl and Live Nation and that they did not want to get dragged into the middle of such a dispute. Furthermore, upon information and belief, Live Nation has denigrated Cohl to representatives of the Rolling Stones in an additional attempt to damage the ability of Cohl to once again obtain the tour promotional rights. In doing so, Live Nation has violated both the terms and the spirit of the Letter Agreement.

33. As a direct and proximate result of Live Nation's conduct, Cohl Parties have been damaged.

## COUNT I
## BREACH OF CONTRACT

34. Cohl Parties repeat and re-allege the allegations contained in Paragraphs 1 through 33 of the Counterclaim as if set forth fully herein.

35. Under the Letter Agreement, Cohl agreed to pay Live Nation $15,350,000 in return for the right to: (a) not have to bid against Live Nation for the Rolling Stones' next tour, (b) have Live Nation finance the tour, (c) have Live Nation perform the services of the "Exclusive Global Promoter" of the tour, and (d) receive two-thirds of the promoters' profits from the tour. Live Nation has breached the Letter Agreement by depriving Cohl of the very essence of the rights that he paid millions for under the Letter Agreement.

36. Live Nation has also breached its obligation under Section 1.9(a) of the Letter Agreement providing that Cohl take the lead in negotiations with the Rolling Stones. Live Nation has attempted to conduct direct negotiations with the Rolling Stones for its own benefit.

37. Live Nation has separately breached its obligation under Section 1.9(a) of the Letter Agreement by failing to act in a manner that "will be helpful to Cohl's efforts in obtaining the rights to promote the concert tour."

38. Live Nation has separately breached Section 1.9(b) of the Letter Agreement by failing to communicate with Cohl in good faith and provide "reasonable prior notice" of any basis or justification for its assertion that Cohl may not be successful in procuring the rights to the Rolling Stones tour.

**WHEREFORE,** Cohl Parties seek the following judgment against Live Nation:

A. Entry of Judgment that Live Nation has breached the Letter Agreement;

B. Monetary damages for being deprived the benefit of their bargain under the Letter Agreement in connection with the Rolling Stones tour;

C. Monetary damages for lost profits in connection with the Rolling Stones tour;

D. Monetary damages for diminution of the value of S2BN;

E. Entry of Judgment that Cohl Parties are excused from making any further payments to Live Nation under the Letter Agreement or otherwise complying with their obligations under the Letter Agreement that has been materially breached by Live Nation;

F. An award of pre-judgment and post-judgment interest;

G. An award of reasonable attorney's fees and costs related to this action;

H. Any other and further relief provided under law and/or under the agreements between the parties; and

I. Such other and further relief as this Court may deem just and proper.

11

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com        www.coffeyburlington.com

## COUNT II
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

39. Cohl Parties repeat and re-allege the allegations contained in Paragraphs 1 through 33 as if set forth fully herein.

40. Live Nation owes Cohl Parties a duty of good faith and fair dealing by operation of Florida law into the Letter Agreement.

41. Live Nation's actions, as set forth above, constitute a breach of its duty of good faith and fair dealing that is implied by operation of Florida law into the Letter Agreement.

42. More specifically, by not having a reasonable basis to determine that Cohl would be unable to successfully negotiate the rights to promote a Rolling Stones concert tour, and by refusing to identify any basis for its bad faith and unreasonable determination, Live Nation breached its duty of good faith and fair dealing by invoking Section 1.9(b) of the Letter Agreement arbitrarily and capriciously.

43. Moreover, Live Nation has repeatedly taken the position that the Letter Agreement's express terms do not require it to articulate the (non-existent) basis for its purportedly "reasonable judgment" that Cohl would be unable to successfully negotiate the rights to promote a Rolling Stones concert tour, and it has steadfastly refused to do so. Live Nation's actions in this regard are in violation of its duty of good faith and fair dealing, and deprived Cohl of rights for which he paid ample consideration.

44. Live Nation's reasons for invoking Section 1.9(b) of the Letter Agreement and announcing in bad faith a false determination that Cohl would be unable to successfully negotiate the rights to promote a Rolling Stones concert tour, and its refusal to articulate a basis for its determination, were based on whim, caprice, or some other arbitrary consideration, in that Live

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

Nation was motivated by greed to disregard its commitments to Cohl Parties and attempt to obtain for itself rights that belonged to Cohl Parties under the Letter Agreement.

45. No reasonable party would have made the same discretionary decision to invoke Section 1.9(b) of the Letter Agreement arbitrarily and capriciously.

46. Cohl Parties have suffered damages as a result of Live Nation's breach of the covenant of good faith and fair dealing.

**WHEREFORE,** Cohl Parties seek the following judgment against Live Nation:

A. Entry of Judgment that Live Nation has breached its duty of good faith and fair dealing under the Letter Agreement;

B. Monetary damages for being deprived the benefit of their bargain under the Letter Agreement in connection with the Rolling Stones tour;

C. Monetary damages for lost profits in connection with the Rolling Stones tour;

D. Monetary damages for diminution of the value of S2BN;

E. Entry of Judgment that Cohl Parties are excused from making any further payments to Live Nation under the Letter Agreement or otherwise complying with their obligations under the Letter Agreement that has been materially breached by Live Nation;

F. An award of pre-judgment and post-judgment interest;

G. An award of reasonable attorney's fees and costs related to this action;

H. Any other and further relief provided under law and/or under the agreements between the parties; and

I. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Robert K. Burlington, Florida Bar No. 261882
rburlington@coffeyburlington.com
Daniel F. Blonsky, Florida Bar No. 972169
dblonsky@coffeyburlington.com
COFFEY BURLINGTON
Office in the Grove, Penthouse
2699 South Bayshore Drive
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261
*Counsel for Cohl and S2BN*


By:  s/Daniel F. Blonsky

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 8, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Mailing Information for CASE NO. 10-CIV-24144-CMA. Counsel of record currently identified on the Mailing Information list to receive e-mail notices for this case are served via Notices of Electronic Filing generated by CM/ECF. Counsel of record who are not on the Mailing Information list to receive e-mail notices for this case have been served via U.S. Mail.

*s/*Daniel F. Blonsky

14

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com