UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-24144-CIV-ALTONAGA/SIMONTON

LIVE NATION WORLDWIDE, INC.,

    Plaintiff,
v.

MICHAEL COHL and S2BN
ENTERTAINMENT CORP.,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION
## CHALLENGING WORK PRODUCT DESIGNATION

Presently pending before the Court is Defendants' Motion Challenging "Work Product" Designation by Live Nation (DE # 68). Plaintiff has filed a Memorandum of Law in Opposition (DE # 76), and Defendants have filed a Reply (DE # 79). The Honorable Cecilia M. Altonaga has referred this case to the undersigned Magistrate Judge with respect to all discovery motions (DE ## 16, 39). For the reasons stated below, Defendants' Motion is denied.

    I.    **Background**

On August 11, 2011, Plaintiff produced documents to Defendants by computer disc, in response to Defendants' First Request for Production of Documents (DE # 68 at 2). The disc contained several documents, including emails and documents exchanged between Michael Rowles, Executive Vice President and General Counsel of Plaintiff Live Nation Worldwide, Inc. ("Live Nation"), and Joyce Smyth, who is the personal representative of Mick Jagger, the lead singer of the music band The Rolling Stones (DE # 68 at 2). According to the emails exchanged, Michael Rowles sent as an email attachment to Joyce Smyth a draft declaration for her to review and sign, in connection with the litigation of this case, if she was "comfortable with it" (DE ## 68 at 2; 76 at 1-2).

**A copy of the email correspondence between Rowles and Smyth, along with the draft affidavit (filed under seal), have been considered by the Court (DE ## 68-1; 68-2).**

Upon review of the computer disc, defense counsel did not initially find the attached draft declaration referred to in the email exchange. Defense counsel, therefore, contacted Plaintiff's counsel and requested a copy of the email and draft declaration (DE # 68 at 2). Plaintiff's counsel immediately asserted the attorney work product privilege as a basis for not providing the requested items. Shortly thereafter, defense counsel determined that the items had, in fact, been produced on the computer disc, and immediately notified Plaintiff's counsel who, once again, asserted the work product privilege, stating that the draft declaration had been inadvertently produced, and demanded that the item be disregarded, and that all copies be immediately destroyed. Defendants, instead, brought this Motion (DE ## 68 at 3; 76 at 2).

As Plaintiff aptly notes, Defendants do not challenge whether the draft declaration is work product, but whether work product protection was somehow negated or otherwise waived by disclosure of the draft declaration to Ms. Smyth (DE ## 68 at 4; 79 at 2). Accordingly, the issue before the Court is whether Mr. Rowles's sharing of the draft declaration with Ms. Smyth precludes a finding that the draft declaration is protected by the work product doctrine.

II. <u>Legal Standard and Analysis</u>

Federal law governs application of the work product doctrine, even in diversity cases in federal court. *Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 57 Fed. Appx. 58, 60 (3d Cir. 2003); *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006); *Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). Unfortunately, as noted by *Chick-fil-A v. ExxonMobil Corp.*, "There is very little primary authority from the Eleventh Circuit Court of Appeals on what constitutes waiver of the work product privilege." 2009 WL 3763032, No. 08-61422-CIV, at *3 (S.D. Fla. Nov.

10, 2009) (citing *Wood v. Archbold Med. Ctr., Inc.*, 2009 WL 3063392, No. 7:07-CV-109, at *2 (S.D. Ga. Sept. 17, 2009)).  Courts have found, however, that "[w]ork-product protection is waived when protected materials are disclosed in a way that 'substantially increases the opportunity for potential adversaries to obtain the information.'"  *Stern v. O'Quinn*, 253 F.R.D. 663, 681 (S.D. Fla. 2008) (quoting *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y. 1989)).  Courts focus on disclosure to opposing parties, not necessarily other persons.  As *Chick-fil-A* observed, "[T]he overwhelming majority of persuasive authority from other circuits holds that voluntary disclosure of work product information to an *adversary* waives work product protection as to that information."  *Chick-fil-A*, 2009 WL 3763032, at *3 (emphasis added) (citing *Wood*, 2009 WL 3063392, at *2 (citing circuit cases from the First, Third, Eighth, and D.C. Circuit Courts of Appeals)).  Accordingly, "not every situation in which work-product materials are disclosed warrants a finding of waiver.  Rather, the circumstances surrounding the disclosure are key to determining whether an actual waiver of the work-product protection has occurred."  *Stern*, 253 F.R.D. at 681.  In this regard, "work-product protection is waived when protected materials are 'disclosed in a manner [that] is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information.'"  *Id.* (quoting *Niagara*, 125 F.R.D. at 590; and citing, *inter alia*, *Kallas v. Carnival Corp.*, 2008 WL 2222152, No. 06-20115-CIV, at *4 (S.D. Fla. May 27, 2008).[1]

Along with limited precedent in this jurisdiction as to waiver, there is also limited precedent as to which party has the burden to demonstrate waiver.  The Fifth Circuit has found that the burden rests on the party asserting that a waiver has occurred, as opposed to the party protected by the work product doctrine to prove non-waiver.

---

[1] In the case at bar, there is no contention that the inadvertent production of the draft declaration to opposing counsel in connection with the discovery response constitutes a waiver.

*Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 (5th Cir. 2010) (also noting, at 379 n.10, that, while the First Circuit Court of Appeals has found to the contrary, its holding was based on an earlier case concerning attorney-client privilege, not the work product doctrine). In the case at bar, however, the result would be the same regardless of which party has the burden of proof regarding waiver.

Similarly, there is little precedent concerning the facts before the Court. Several courts from other jurisdictions, however, have considered the effect on work product status of disclosing to a non-party a proposed draft of the non-party's affidavit. While some courts analyze disclosure in terms of whether it constitutes waiver of work product protection, others appear to analyze disclosure as an element of the work product doctrine, itself. Regardless of the analytical framework used, as stated below, the undersigned finds more persuasive the reasoning behind those cases that have found that disclosure to a non-party of his or her draft affidavit does not, itself, negate work product protection.

For example, in *Inst. for the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals* ("*PETA*"), the court considered whether draft affidavits, exchanged between counsel and non-party affiants, were protected by the work product doctrine. 272 F.R.D. 124, 125 (S.D.N.Y. 2011). The court held that executed affidavits (thus, obviously shared with the non-party) that have not been served or filed were protected by the work product doctrine. *Id.* Furthermore, even when an executed affidavit has been affirmatively used in the litigation, and earlier drafts of the affidavit may contain facts not available in the final version, the unexecuted drafts do not lose their work product distinction. *Id.* The court reasoned that counsel should be able to remain in control of how it chooses to litigate its case. Suggesting that this holding follows a developing trend, the court cites Wright & Miller, which notes, "Recent cases have generally held that draft affidavits, and communications with counsel relating to

4

affidavits, are covered by the work-product rule." *Id.* (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (3d ed. 2008) (citing *Randleman v. Fidelity Nat'l Title Ins. Co.*, 251 F.R.D. 281 (N.D. Ohio 2008) (noting same trend in granting work product protection to draft affidavits exchanged between counsel and non-party affiants, citing cases from the Southern District of New York and District of Nevada))). *Randleman* notes factual distinctions among cases on this issue that can lead to different analyses, specifically with regard to whether a party relies upon an affidavit, and whether a final version is filed. The court points out that a different result may arise when a party relies upon an executed affidavit that it does not produce to the opposing party. These distinctions, however, do not implicate the case at bar. Instead, as Defendants do not argue that Plaintiff relies on Ms. Smyth's affidavit, there is no basis under *PETA* to waive protection.

In another example, the court in *Gerber v. Down East Cmty. Hosp.*, 266 F.R.D. 29, 37 (D. Me. 2010), considered communications between plaintiffs and a potential non-party witness that contained a draft affidavit. The court declared that draft affidavits are subject to the same rules as witness statements "even if they are executed by a non-party." *Id.* citing *Stokes v. City of New York*, 2006 WL 2064976, No. CV 2005-0007(JFB)(MDG), at * 2 (E.D.N.Y. July 24, 2006) (holding that non-party affidavit was protected by work product even though her counsel participated in drafting it). In regard to witness statements, the court, after likening a witness statement to the email responses a witness provides to counsel in an email interview, states, "The fact that the witness authors a portion of the email correspondence chain and likely retains a copy of the correspondence does not undermine the [work product] privilege." *Gerber,* 266 F.R.D. at 33. The court raised (but did not fully explore) the potential argument that counsel runs the risk that the witness might share her statement with an opposing party. Nonetheless, in the absence of a showing of undue hardship, where the parties

5

presumably enjoy equal access to the witness, the party seeking disclosure may not simply "piggy-back on or poach the work-product" of opposing counsel. *Id.* at 33-34. In the case at bar, there has been no showing of undue hardship or unequal access, and the reasoning of *Gerber* otherwise supports protecting Ms. Smyth's draft affidavit.

In another instance, in *In re Convergent Techs. 2d Half 1984 Secs. Litig.*, 122 F.R.D. 555, 564-65 (N.D. Cal. 1988), the court held that conferral between counsel and a non-party witness as to the content of his statement did not waive work product protection. The court considered waiver along the lines outlined above in *Stern*, specifically, whether the party drafting the statement substantially increased the possibility, through conferral and review with the witness, that an opposing party would come into possession of the statement. The court noted that the party seeking disclosure had a burden to prove waiver. Furthermore, the possibility of disclosure, the court reasoned, must be more than abstract – "To support a finding of waiver, defendants would have to adduce persuasive evidence that plaintiffs' counsel knew or should have known specific facts that substantially increased the likelihood that [one of the non-party witnesses] would acquire his statement and then give a copy to defendants." The court based its analysis on the principles that waiver requires a knowing and voluntary relinquishment of a right, and the party seeking disclosure had the burden of proof. *Id.* at 565. Similarly, in the case at bar, there has been no showing as to the likelihood of Defendants to obtain the draft affidavit, nor have they appeared to come across it except through the inadvertent disclosure.

Finally, the undersigned finds persuasive the reasoning set forth in *1100 West, LLC v. Red Spot Paint & Varnish Co.*, 2007 WL 2904073, No. 1:05-cv-1670-LJM-WTL (S.D. Ind. May 18, 2007). In *1100 West*, defendants sought a draft affidavit of a non-party witness prepared by plaintiff's agent, a private investigator. *Id.* at *1. The court held that these draft affidavits were protected by the work product doctrine, and that there was no

6

waiver by sharing them with the witness. The court cites the standard requiring a finding of a substantially increased likelihood that an opposing party would obtain the information. Next, the court continues by emphasizing one of the purposes of the work product doctrine: to prevent a litigant "from taking a free ride on the research and thinking of his opponent's lawyer." *Id.* at *2 (citation omitted). The court points out that defense counsel, if it wishes, can "conduct their own interview and obtain their own affidavit; they are not entitled to ride upon the coattails of plaintiff's counsel." *Id.* The court adds in a footnote that this understanding of waiver as to unsigned draft affidavits is required in order to give each component of Fed. R. Civ. P. 26(b)(3) meaning. *Id.* at n.2.

In the case at bar, Defendants highlight several cases to support their contentions as to the effect of disclosure. For example, they cite *United States v. Suarez*, 820 F.2d 1158 (11th Cir. 1987) to support their work product claims, but *Suarez* (and certain other cases cited by Defendants) concerned waiver of attorney-client privilege, not the work product doctrine. *See Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 653-54 (S.D. Fla. 2009) (noting that the work product doctrine is "distinct from and broader than the attorney-client privilege," and that work product protection is not automatically waived by disclosure to a third party).

In addition, Defendants rely on *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303 (E.D. Mich. 2000), but that case did not address the effect of sharing a draft affidavit with a third-party. Only in a footnote did the court briefly suggest that, even if draft affidavits were work product, "it could be argued" that waiver necessarily occurs by sharing these drafts with a third party. *Id.* at 307 n.4. The court did not resolve this argument, however, as the waiver issue was not directly before the *Infosystems* court.

Also, Defendants emphasize that Plaintiff's disclosure of the draft declaration to Ms. Smyth was voluntary, citing *Stern*. *Stern*, however, discusses the voluntariness of disclosure as a component of its analysis, not a dispositive factor, which comports with

7

the considerable focus in the analysis on whether the disclosing party's actions were consistent with an intent to maintain the secrecy of materials in relation to the party's adversaries.  *Stern* described the standard for determining whether disclosure was consistent with this intention, and then added, "And as long as the disclosure of the information was voluntary, a waiver will result."  *See Stern*, 253 F.R.D. at 681-82.

Finally, Defendants assert that the "common interest" waiver exception, for work product documents being exchanged among certain parties, does not apply because Ms. Smyth does not have a common interest with Plaintiff under this doctrine.  Indeed, as Defendants note, Plaintiff has not asserted the common interest exception.  Defendants, however, appear to implicitly argue that the common interest exception is the only avenue whereby Plaintiff's disclosure to Ms. Smyth would be protected.  None of the cited cases, however, support this narrow of a view of protected disclosure.

After a careful review of the circumstances of this disclosure and legal analyses regarding the effect of disclosure to a non-party of a draft affidavit or statement, the undersigned finds that Ms. Smyth's draft declaration is protected by the work product doctrine.  The facts presented do not demonstrate that Plaintiff intended to waive the confidentiality of its exchange with Ms. Smyth in relation to its adversaries in this matter, nor do Plaintiff's actions suggest a "substantially" increased opportunity for a Defendant to obtain the protected information.  While Ms. Smyth is a third-party, Mr. Rowles email was sent directly to her only.  Neither person suggested sharing the contents of the message or its attachment with anyone, other than possibly counsel for Ms. Smyth (DE # 68-1 at 1).  Importantly, it does not appear to have been shared.  Defendants point out that Mr. Rowles did not take care to exchange with Ms. Smyth a hardcopy draft of the declaration, nor did Mr. Rowles explicitly ask Ms. Smyth to keep the contents of the email confidential (DE # 79 at 3-4).  The undersigned, however, cannot reasonably infer from these facts that Mr. Rowles, therefore, intended for Ms. Smyth to strip the email

exchange and its attachments of confidentiality and share their contents with Defendants.

Moreover, Defendants cannot reasonably argue that Plaintiff substantially increased the opportunity for Defendants to obtain the documents by Plaintiff's disclosure to Ms. Smyth, as Defendants apparently only came upon these materials through Plaintiff's unintended disclosure during discovery.  *Cf. Stern*, 253 F.R.D. at 683 (noting, as disclosed materials came to plaintiff's attention through multiple, publically available sources, that "it is significant that Plaintiff did, in fact, learn much of the information disclosed").  Finally, Defendants do not make any argument that they face an undue hardship in being prohibited from obtaining the draft affidavit, or that they do not have equal access to Ms. Smyth to conduct their own fact-finding.  In sum, the circumstances of this disclosure do not support a finding that Plaintiff acted inconsistent with maintaining the secrecy of the draft declaration in relation to Plaintiff's adversaries.  *Cf. Stern*, 253 F.R.D. at 682 (attorney's agents found to have taken actions inconsistent with maintaining secrecy by providing protected information to author of book for publication, and by disclosing the information in public forums on the internet).

Therefore, upon a review of the record, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion Challenging "Work Product" Designation by Live Nation (DE # 68) is **DENIED**.  Any copies of the draft declaration of Ms. Smyth provided to Defendants shall be disregarded, and all copies of it in Defendants' possession shall be immediately destroyed.

**DONE AND ORDERED** in chambers in Miami, Florida, on November 17, 2011.

_____
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**

**The Honorable Cecilia M. Altonaga**
     **United States District Judge**
**All counsel of record**